E-FILED
Saturday, 18 February, 2023  12:47:45 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS**

**ROCK ISLAND DIVISION**

| | |
|---|---|
| Yumbella Batey, individually and on behalf of all others similarly situated, | 4:23-cv-04031 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| GSK Consumer Health, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.      GSK Consumer Health, Inc. ("Defendant") manufactures and sells cough syrup promising "cough relief," shelved next to traditional over-the-counter ("OTC") cough and cold medications, yet described as a "dietary supplement" under the Robitussin brand, synonymous with cough syrup for over 50 years ("Product").



## I.  CHANGING CONSUMER DEMAND FOR COUGH AND COLD PRODUCTS

2.  The past 15 years have seen a steady decline in children's usage of traditional OTC cough and cold medications due to risks of side effects and incorrect dosing.

3.  The Consumer Healthcare Products Association ("CHPA") and Food and Drug Administration ("FDA") have even recommended against giving these products to children under four and two years old.

4.  According to Mintel's "Cough, Cold, Flu, and Allergy Remedies" report from April 2019, 37% of respondents said traditional OTC cough products posed safety risks and could cause unwanted side effects, regardless of age.

5.  Moreover, the cough and cold category has not seen major switches from prescription to OTC in several years, resulting in a stagnant category in terms of annual sales.

6.  Amidst or because of this distrust of OTC products, consumers have sought more nontraditional treatments for cough relief, with this market category expected to reach $4.5 billion by 2024.

7.  Many consumers believe standard OTC and prescription products merely suppress symptoms, while natural alternatives work in concert with the body's healing mechanisms.

8.  Almost 60% of the public believe that natural ingredients in this emerging class of products are equally, if not more effective, in treating cold and coughs.

9.  Demand for natural and "unmedicated" products for children is attributed to their "particularly young well-educated moms [who] don't want to give their kids anything artificial or drug-related unless they have to."

10.  This is consistent with how many purchasers are more likely to seek consumable products of any kind without long and complicated lists of ingredients, including synthetic components and additives.

11.     According to trade publications, because "herbs [and] botanicals [are] traditionally associated with many natural remedies, it is not surprising that they are more frequently being used for purposes typically found in the OTC drug category."[1]

12.     One academic publication cited "the increased consumption of [natural ingredients including]" in response to the coronavirus pandemic.[2]

13.     This includes increased demand for ingredients associated with immune benefits, such as elderberry, lemon, honey and ivy leaf extract.[3]

## II.    "FREE FROM ARTIFICIAL COLORS, FLAVORS & PRESERVATIVES" IS MISLEADING

14.     Consumers understand natural consistent with its dictionary definition as existing in or caused by nature and not made or caused by humankind.

15.     Consumers consider artificial as made or produced by humans rather than occurring naturally.

16.     A preservative is something that preserves or has the power of preserving, i.e.,  to protect against decay, discoloration, or spoilage.

17.     A chemical preservative is any chemical that when added to food, tends to prevent or retard deterioration. 21 C.F.R. § 101.22(a)(5).

18.     The statement that the Product is "Free from artificial colors, flavors & preservatives" is false, deceptive and misleading because it contains citric acid, an artificial

---

[1] Dr. A. Elizabeth Sloan & Dr. Catherine Adams Hutt, Getting Ahead of the Curve: Herbs & Botanicals, Sloan Trends, Inc., Nutraceuticals World, July 1, 2016.

[2] Pieroni, Andrea, et al. "Taming the pandemic? The importance of homemade plant-based foods and beverages as community responses to COVID-19." Journal of ethnobiology and ethnomedicine 16.1 (2020): 1-9.

[3] Immunity boosters: Abundant opportunities for health halo ingredients as wellness trends prevail, Food Ingredients First, Sept. 14, 2022.

3

ingredient which serves multiple preservative functions.



19.     Citric acid functions as a preservative by maintaining stability of the Product's ingredients as an excipient due to its antioxidant properties.[4]

20.     An oxygen scavenger, citric acid prevents oxidation which would cause the Product to become spoiled by microorganisms, so it is consumable and shelf-stable for a longer period of time after being made.

21.     Until demand outstripped supply in the early twentieth century, the only citric acid was natural, from citrus fruit.

22.     For over a hundred years, the production of citric acid has not been natural because it is made beginning with fermentation from the Aspergillus niger mold.

23.     The result is a broth containing citric acid, which must be recovered through

_____
[4] https://pubchem.ncbi.nlm.nih.gov/compound/Citric-Acid

numerous chemical reactions and using chemical compounds.

24.     These include treating the filtrate with lime solution or calcium carbonate.

25.     This chemical reaction forms tri-calcium citrate tetra hydrate, that is treated with sulfuric acid in acidolysis reactors.

26.     The citric acid is then purified by passing through columns of activated charcoal and ion exchangers.

27.     The purified solution is evaporated to produce citric acid crystals that are dried and packaged for sale.

28.     While fermentation may be in theory a natural process, the multiple chemical reactions, synthetic mineral salts and synthetic reagents required for extracting citric acid mean it is not a natural preservative, but an artificial one.

29.     In 2010, the FDA warned a company selling pineapple products which failed to truthfully disclose "they contain[ed] the chemical preservative[s] [] citric acid [because] their label[s] fail[ed] to declare th[is] preservative with a description of [its] function" as a preservative, such as slowing spoilage or promoting color retention.

30.     By adding the chemical preservative citric acid, the label is required to, yet fails, to disclose its function in a parenthetical, such as "'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention'." 21 C.F.R. § 101.22(j).[5]

## III.   MISLEADING "COUGH RELIEF" CLAIMS

31.     FDA regulations prohibit dietary supplements from making make explicit or implicit "disease claims."

---

[5] For example, "Citric Acid (Preservative)"; FDA, Dietary Supplement Labeling Guide: Chapter V. Ingredient Labeling.

32.    "Disease" is defined as damage to an organ, part, structure, or system of the body such that it does not function properly, or a state of health leading to such dysfunction. 21 CFR 101.93(g)(1).

33.    A disease claim is a statement that a product has an effect on a specific disease or class of diseases or an effect on the characteristic signs or symptoms of a specific disease or class of diseases, using scientific or lay terminology. 21 CFR 101.93(g)(2)(i)-(ii).

34.    By promoting the Product as providing "cough relief," it tells purchasers that it is effective for treating an upper respiratory infection ("URI"), which is the cause of the common cough.

35.    "Cough relief" claims are only authorized for specific OTC products, because the FDA approval process is intended to prevent products from making claims that they are unable to meet.

36.    This protects consumers from being misled by ineffective products, instead of seeking relief through prescription drugs or approved OTC medications.

37.    If a product marketed as a dietary supplement contains a disease claim, it must be regulated as a drug.

38.    Dietary supplements are composed of dietary ingredients like vitamins, minerals, herbs, botanicals, and other food like ingredients.

39.    Their purpose is to augment the diet to promote health, and cannot legally be sold to treat or prevent disease or disease symptoms.

40.    Even the back label fails to adequately disclaim the "cough relief" claim, by noting that "honey and ivy leaf relieve occasional cough associated with hoarseness, dry throat and irritants."



41.     Purchasers of the Product are unlikely to choose one under the Robitussin brand for coughs brought on by "hoarseness, dry throat and irritants."

42.     The Product's placement in drug stores next to OTC monograph cough products – at Defendant's directions – causes consumers to expect it is equivalent in effectiveness to those items when it is not.

## IV.   EFFICACY OF HONEY AND IVY EXTRACT ON COUGH RELIEF

43.     No credible evidence supports honey and ivy leaf extract to provide cough relief.

44.     These substances are not capable of providing cough relief because they are unable to act on the areas causing coughs.

Jurisdiction and Venue

45.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C.

§ 1332(d)(2).

46.    The aggregate amount in controversy exceeds $5 million, including any statutory and

punitive damages, exclusive of interest and costs.

47.    Plaintiff is a citizen of Illinois.

48.    Defendant's sole member is a citizen of Missouri.

49.    The class of persons Plaintiff seek to represent includes persons who are citizens of

different states from which Defendant is a citizen.

50.    The members of the classes Plaintiff seek to represent are more than 100, because

the Product has been sold with the representations described here from thousands of locations

including electronic stores, drug stores, convenience stores, big box stores, and/or online, across

the States covered by the proposed classes.

51.    Venue is in this District with assignment to the Rock Island Division because a

substantial part of the events or omissions giving rise to these claims occurred in Warren County,

including Plaintiff's purchase and use of the Product, reliance on the representations and

omissions, and/or subsequent awareness they were false and misleading.

Parties

52.    Plaintiff Yumbella Batey is a citizen of Monmouth, Warren County, Illinois.

53.    Defendant GSK Consumer Health, Inc. is a Delaware corporation with a principal

place of business in New Jersey.

54.    Plaintiff purchased the Product on one or more occasions within the statutes of

limitations for each cause of action alleged, at stores including Walmart, 659 Knox Square Dr,

Galesburg, Illinois between 2020 and 2022, among other times.

55.     Plaintiff believed and expected the Product (1) would provide the promised "cough relief," because that is what the label said, it was shelved in proximity to traditional OTC cough products, and was sold under the Robitussin brand, associated for over 50 years with OTC cough medicines, (2) did not contain artificial preservatives and (3) provided cough relief through its use of honey and ivy leaf.

56.     Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

57.     As a result of the false and misleading representations, the Product is sold at premium price, approximately not less than $13.59 per 8.3 oz, excluding tax and sales.

58.     Plaintiff bought the Product at or exceeding the above-referenced price.

59.     Plaintiff paid more for the Product, would have paid less or not have purchased it had she known the representations and omissions were false and misleading.

60.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

61.     Plaintiff chose between this Product and others represented similarly, but which did not misrepresent or omit their attributes, requirements, instructions, features, and/or components.

62.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

63.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but other natural cough treatments, because she is unsure whether those representations are truthful.

64.    If Defendant's labeling were to be truthful, Plaintiff could rely on the labeling of other natural cough treatments.

<u>Class Allegations</u>

65.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Montana, Wyoming, Utah, Idaho and Alaska who purchased the Product during the statutes of limitations for each cause of action alleged.

66.    Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

67.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

68.    Plaintiff is an adequate representative because her interests do not conflict with other members.

69.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

70.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

71.    Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

72.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, *et seq.*</u>
<u>(Illinois Class)</u>

73.    Plaintiff incorporates by reference all preceding paragraphs.

74.    Plaintiff expected the expected the Product (1) would provide the promised "cough relief," because that is what the label said, it was shelved in proximity to traditional OTC cough products, and was sold under the Robitussin brand, associated for over 50 years with OTC cough medicines, (2) did not contain artificial preservatives and (3) provided cough relief through its use of honey and ivy leaf.

75.    Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>
<u>(Consumer Fraud Multi-State Class)</u>

76.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

77.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

78.    Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose</u>
<u>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

79. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it (1) would provide the promised "cough relief," because that is what the label said, it was shelved in proximity to traditional OTC cough products, and was sold under the Robitussin brand, associated for over 50 years with OTC cough medicines, (2) did not contain artificial preservatives and (3) provided cough relief through its use of honey and ivy leaf.

80. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

81. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as cough treatments based on natural ingredients, without synthetic ingredients, which was effective like traditional OTC products but without the negative side effects or risks, and developed its marketing and labeling to directly meet their needs and desires.

82. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it (1) would provide the promised "cough relief," because that is what the label said, it was shelved in proximity to traditional OTC cough products, and was sold under the Robitussin brand, associated for over 50 years with OTC cough medicines, (2) did not contain artificial preservatives and (3) provided cough relief through its use of honey and ivy leaf.

83. Defendant's representations affirmed and promised that the Product (1) would provide the promised "cough relief," because that is what the label said, it was shelved in proximity to traditional OTC cough products, and was sold under the Robitussin brand, associated for over 50 years with OTC cough medicines, (2) did not contain artificial preservatives and (3) provided

cough relief through its use of honey and ivy leaf.

84.     Defendant described the Product so Plaintiff believed that it (1) would provide the promised "cough relief," because that is what the label said, it was shelved in proximity to traditional OTC cough products, and was sold under the Robitussin brand, associated for over 50 years with OTC cough medicines, (2) did not contain artificial preservatives and (3) provided cough relief through its use of honey and ivy leaf, which became part of the basis of the bargain that it would conform to its affirmations and promises.

85.     Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

86.     This duty is based on Defendant's outsized role in the market for power banks, as custodian of the Robitussin brand, synonymous with traditional and effective OTC cough medicine.

87.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

88.     Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

89.     Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

90.     The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

91.     The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was

13

marketed as if it (1) would provide the promised "cough relief," because that is what the label said, it was shelved in proximity to traditional OTC cough products, and was sold under the Robitussin brand, associated for over 50 years with OTC cough medicines, (2) did not contain artificial preservatives and (3) provided cough relief through its use of honey and ivy leaf.

92.    The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected it (1) would provide the promised "cough relief," because that is what the label said, it was shelved in proximity to traditional OTC cough products, and was sold under the Robitussin brand, associated for over 50 years with OTC cough medicines, (2) did not contain artificial preservatives and (3) provided cough relief through its use of honey and ivy leaf, and she relied on its skill and judgment to select or furnish such suitable product.

Negligent Misrepresentation

93.    Defendant had a duty to truthfully represent the Product, which it breached.

94.    This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the custodian of the Robitussin brand, the most trusted name in cough relief, recommended by doctors for decades.

95.    Defendant's representations regarding the Product went beyond the specific representations on its packaging and labels, as they incorporated its extra-labeling promises and commitments to quality Robitussin has been known for.

96.    These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

97.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

98.     Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

<u>Fraud</u>

99.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it (1) would provide the promised "cough relief," because that is what the label said, it was shelved in proximity to traditional OTC cough products, and was sold under the Robitussin brand, associated for over 50 years with OTC cough medicines, (2) did not contain artificial preservatives and (3) provided cough relief through its use of honey and ivy leaf.

100.   Defendant was aware the Product could not provide cough relief and that honey and ivy leaf were not capable of relieving coughs.

101.   The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

<u>Unjust Enrichment</u>

102.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4.  Awarding costs and expenses, including reasonable attorney and expert fees; and

5.  Other and further relief as the Court deems just and proper.

Dated:   February 18, 2023

Respectfully submitted,

/s/ Spencer Sheehan

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com